IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RACHEL O'DONNELL, | : | |
| --- | --- | --- |
|    Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | No. 19-1963 |
| SECURITY, | : | |
|    Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

TIMOTHY R. RICE                                                                     October 18, 2019
U.S. MAGISTRATE JUDGE

Plaintiff Rachel O'Donnell alleges the Administrative Law Judge ("ALJ") erred in denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by improperly: (1) evaluating her migraine headaches; (2) discounting the opinion of her treating physician; and (3) finding her testimony inconsistent with the medical evidence. Pl. Br. (doc. 12) at 1. I disagree and deny O'Donnell's claim.[1]

Migraines

O'Donnell contends the ALJ misconstrued her medical records by overlooking July 2016 records showing complaints of daily migraines and diagnosing migraine with aura, chronic daily headache, and menstrual migraines. Pl. Br. at 6, Reply (doc. 14) at 1 (citing R. at 964-65). She argues the ALJ impermissibly substituted his own lay opinion for medical evidence when he

---

[1] O'Donnell consented to my jurisdiction on May 30, 2019 (doc. 8), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018). See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

relied on a stable February 2018 MRI to discount O'Donnell's subjective reports of functionally debilitating migraines. Pl. Br. at 6-7, Reply at 1-2.

The ALJ found O'Donnell's migraines were not disabling based on her exaggeration of symptoms in the medical record, which showed her headaches had no serious physiological basis. R. at 26. He contrasted her testimony, that she had experienced a headache every day since September 2015, with her report in December 2015 that she was experiencing one two-to-three-day headache each week and her April 2016 reports that she was experiencing two migraines with aura per month and two or three migraines per month related to her menstrual cycle. Id. He also noted that the February 2018 MRI showed her neurological condition was stable, that her cardiac condition was classified as "level II, which indicated mild symptoms and only slight limitation during ordinary activity," and that her blood pressure concerns required aggressive medication management and avoiding only heavy lifting and straining. Id. The ALJ's analysis constitutes substantial evidence. See Burkhart v. Colvin, No. CIV.A. 13-238J, 2015 WL 1507856, at *3 (W.D. Pa. Mar. 31, 2015) (denying claim that ALJ failed to adequately address migraine headaches that were acknowledged but found not to cause debilitating functional impairments).

His analysis is also supported by other evidence. For example, the neurologist who diagnosed O'Donnell with multiple kinds of migraines also attributed her headaches at least in part to "medication overuse." R. at 966. Another physician, Dr. Testa, treated O'Donnell's headaches beginning in April 2015. Id. at 490. Although there is evidence that O'Donnell complained of increased headaches in March 2016, id. at 974, Dr. Testa's records document a stable treatment regimen since May 2017. See id. at 1355 (noting in December 2015 that her

2

non-menstrual migraines were relieved by Aleve); 1294 ("continu[ing]" the previously-prescribed treatment in May 2017); 1496 (lumping migraine treatment into the "other" category in August 2017); 1490 (no longer listing the migraine diagnosis specifically in a regular September 2017 assessment). In March 2018, O'Donnell's neurosurgeon described her migraines as "not intractable." Id. at 1537.

Because the ALJ accurately noted the inconsistency between O'Donnell's testimony and the medical record, addressed the potential neurological and cardiac bases for her headaches, and reasonably concluded her migraines did not cause the debilitating functional limitations O'Donnell claimed, he cited substantial evidence to justify his conclusion. Burkhart, 2015 WL 1507856, at *3.

Dr. Shipon

O'Donnell also claims the ALJ failed to provide substantial evidence to support giving little weight to the opinion of her treating cardiologist, Dr. David Shipon. Pl. Br. at 8-10. Dr. Shipon opined in April 2017 that O'Donnell could not lift or carry any weight; could sit, stand, or walk for less than two hours in an eight-hour day; was subject to a variety of other postural limitations; would need frequent breaks; and would be absent from work more than four days per month. R. at 1144-46.

Dr. Shipon's, however, was not the only treating physician's opinion in the record. O'Donnell's cardiac surgeon and neurosurgeon both opined O'Donnell should avoid only heavy lifting due to her Level II, a.k.a mild, aneurysm. Id. at 1285, 1517. The ALJ concluded the "extreme limitations" in Dr. Shipon's opinion were inconsistent with his own "unremarkable examination results." Id. at 25. The ALJ cited records of Dr. Shipon's August and June 2017

3

appointments, and contrasted Dr. Shipon's opinion with the surgeons' opinions as well as a finding of normal muscle strength in November 2017. Id.

The ALJ accurately summarized Dr. Shipon's findings. Id. at 1415, 431. He also accurately summarized the contrast between the Dr. Shipon's opinion and the other doctors'. Id. at 1285; 1518. Further, he accurately noted that, despite testifying she was bedbound 90% of the time, O'Donnell retained normal muscle strength. Id. at 47, 1517.

O'Donnell argues the ALJ erred by not addressing each of the regulatory factors when discussing Dr. Shipon's opinion. Pl. Br. at 8-9. The ALJ addressed the opinion's supportability and consistency, but never explicitly noted that Dr. Shipon had personally examined O'Donnell, maintained a treating relationship, and was a specialist in cardiology. See 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The regulatory factors the ALJ failed to address, however, would not have weighed in favor of Dr. Shipon's opinion over the other doctors' opinions because they also examined O'Donnell, maintained a treating relationship with her, and were accredited in relevant specialties. R. at 1285, 1518.

Dr. Shipon's opinion as to the nature and severity of an impairment is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the ALJ was required to address and weigh the conflicting evidence provided by the other physicians. Id. His failure to specifically list the factors that would not have helped him do so fails to justify remand. See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) ("the ALJ, of course, need not employ particular 'magic' words"); Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 767 (3d

4

Cir. 2016) (affirming ALJ opinion despite harmless error). The ALJ supported his treatment of Dr. Shipon's opinion with substantial evidence. See Bowser v. Barnhart, 84 F. App'x 241, 244 (3d Cir. 2004) (confirming ALJ opinion that denied benefits despite treating physician opinion based on conflicting medical opinions).

Consistency Analysis

O'Donnell contends the ALJ applied the wrong legal standard in his consistency analysis, improperly relied on O'Donnell's daily activities, and failed to address her medication side effects. Pl. Br. at 11-12.

The ALJ did not utilize the wrong legal standard when he described O'Donnell's allegations as "not fully consistent with her treatment notes." R. at 26. He was required to assess "the extent to which [O'Donnell's] alleged functional limitations and restrictions . . . [could] reasonably be accepted as consistent" with the evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Because he determined this extent was "not fully" consistent and supported his determination with substantial evidence, it survives judicial review. 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Even "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for" it. Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 763–64 (3d Cir. 2009); see also Moon v. Berryhill, No. 4:18-0323, 2018 WL 7002038, at *12 (M.D. Pa. Dec. 19, 2018), report and recommendation adopted, No. 4:18-CV-00323, 2019 WL 162503 (M.D. Pa. Jan. 10, 2019) (citing SSR 16-3p to reject argument that ALJ applied the wrong legal standard by finding allegations "not entirely consistent" with evidence).

The ALJ did not determine that O'Donnell's ability to perform a limited range of daily activities proved she was able to work. Instead, he found her testimony of debilitating functional limitations inconsistent with the record because it minimized daily activities she had previously admitted performing. R. at 27. He also noted that her alleged onset date coincided with the date she and her husband sold their business, even though she had been able to wait on customers prior to its closing. Id. In addition, the ALJ relied on the inconsistency between her testimony that she spent 90 percent of her day in bed and needed a cane to walk with evidence that she was able to walk normally and retained good strength, normal gait, and overall good range of motion. Id. at 26.

The ALJ accurately noted there was no record of a provider recommending long-term use of a cane, and the records he cited documented normal muscle strength. Id. (citing records 24F and 32F). Additional records show that, for example, O'Donnell was walking independently, with a steady gait and full range of motion, in August 2018. Id. at 1574-75; see Bokor v. Comm'r of Soc. Sec., F. App'x 186, 188 (3d Cir. 2012) (affirming credibility analysis that relied in part on inconsistency between complaints of lack of mobility and examinations showing no muscle atrophy).

O'Donnell argues the ALJ should have specifically addressed the alleged side effects of her medications because her treating physician "noted that O'Donnell's medications cause fatigue and a drop in blood pressure." Pl. Br. at 12. O'Donnell, however, mischaracterizes that opinion, which notes only that her medication "can" cause these issues. R. at 1143. Other evidence in the record suggests that, when a medication caused her to experience significant side effects, O'Donnell stopped taking it. See, e.g., id. at 964-65 (O'Donnell reduced the dosage of

6

one medication and stopped taking another when she did not like their side effects). O'Donnell has cited no evidence showing that the medications she continued to take caused any significant ongoing side effects for her. See Pl. Br. at 12. The ALJ did not err by failing to address a merely theoretical symptom. Grandillo v. Barnhart, 105 F. App'x 415, 419 (3d Cir. 2004) (claimant "has not cited to any medical evidence demonstrating that she suffered adverse side effects . . . [and] her own conclusory statements would not establish a sufficient ongoing struggle with any side-effects to undermine the ALJ's determination").

O'Donnell's rare combination of conditions requires her to closely monitor her cardiac status, and obtain surgery if or when the risks associated with her condition outweigh the risks of surgery itself. Id. at 1285. The ALJ, however, emphasized that the RFC was based on O'Donnell's current "actual functional restrictions," not the seriousness of her diagnoses. Id. at 27. Even life-threatening medical diagnoses are insufficient to establish disability without evidence of specific functional limitations. Walker v. Barnhart, 172 F. App'x 423, 426 (3d Cir. 2006) (denying benefits despite diagnoses of HIV and Hepatitis B).

An appropriate Order accompanies this opinion.